# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| TRACY RYAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:15-CV-244-TLS |
| | ) | |
| TOWN OF HIGHLAND, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This litigation arises out of Plaintiff Tracy Ryan's termination of employment with Defendant Town of Highland. The Plaintiff claims that the Defendant violated Title VII when she was subjected to a hostile work environment on the basis of her sex, and was ultimately terminated from employment on the basis of her sex and in retaliation for complaining about discrimination. In addition to naming her employer, the Plaintiff also sued John Bach in his individual capacity and as Public Works Director for the Town of Highland. The claims against Bach were dismissed because there is no Title VII liability for individuals, and the claim against him in his official capacity was duplicative of the claims against the Town of Highland.

The Town of Highland has moved for summary judgment, which the Plaintiff opposes. For the reasons stated in this Opinion and Order, the Court grants the Defendant's Motion for Summary Judgment [ECF No. 22].

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Before filing suit, a Title VII plaintiff must file a charge with the EEOC and receive a right-to-sue letter. *See* 42 U.S.C. § 2000e-5; *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). "An aggrieved employee may not complain to the EEOC of only certain

instances of discrimination, and then seek judicial relief for different instances of discrimination." *Rush*, 966 F.2d at 1110 (explaining that this rule accords with the "principle of primary jurisdiction in the agency"). Title VII's charge requirement serves two primary purposes: "it gives the EEOC and the employer a chance to settle the dispute, and it gives the employer notice of the employee's grievances." *Huri v. Office of the Chief Judge of the Cir. Ct. of Cook Cty.*, 804 F.3d 826, 831 (7th Cir. 2015) (citing *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)). Hence, a Title VII claim falls within the scope of the charge so long as "there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Cheek*, 31 F.3d at 500. At a minimum, the charge and the complaint must both "describe the same conduct and implicate the same individuals." *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 257 (7th Cir. 2011) (quoting *Cheek*, 31 F.3d at 501). Nevertheless, the scope of an EEOC charge should be reviewed liberally. *Huri*, 804 F.3d at 831 (citing *Farrell v. Butler Univ.*, 421 F.3d 609, 616 (7th Cir. 2005)); *see also Rush*, 966 F.2d at 1111 (describing the scope of construction as a "lenient standard").

The Plaintiff's Charge of Discrimination, filed on March 19, 2015, with the Indiana Civil Rights Commission, contains the following allegations:

> I worked at the Town of Highland since 2004. My latest position was a Driver B. In 2014 two male coworkers were fired after I and the secretary, Judy Vaughn, complained about how they treated me. On March 3, 2015 I was fired by John Bach, Public Works Director, for allegedly participating in illegal and unethical activity. I believe John fired me because I was the only female, besides the secretary (Judy), that worked for the Public Works Department.
>
> I believe I was fired due to my gender, female, and in retaliation for complaining about male coworkers harassing me in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Charge, ECF No. 23-11.) In the portion of the Charge that indicates the dates of discrimination, the March 3, 2015, termination date is provided as both the earliest and the latest date that discrimination took place.

The Defendant argues that the Plaintiff failed to exhaust the hostile work environment claim that she is now advancing in this litigation. The only mention of harassment in her Charge was in the context of explaining her retaliation claim: she complained about the treatment she received from two male coworkers (who were fired) but alleges that she was terminated for making the complaints. Moreover, she does not provide any of the underlying factual information for a claim of harassment and, thus, did not present the Defendant with an opportunity to appreciate the claim or for the EEOC to investigate it. The Court agrees.

A Title VII hostile environment claim is a discrimination claim based on the plaintiff's membership in a protected category, but in contrast to discrete acts of discrimination like termination, failure to promote, refusal to hire, or denial of a transfer, "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (citing 42 U.S.C. § 2000e–5(e)(1)); *see also id.* at 115–17 (elaborating on differences between discrete acts and hostile environment claims). "Normally, retaliation, sex discrimination, and sexual harassment charges are not "like or reasonably related" to one another to permit an EEOC charge of one type of wrong to support a subsequent civil suit for another." *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003) (citing *Cheek*, 30 F.3d at 501).

The Plaintiff's allegations regarding the reasons she was fired, as well as the discrete date cited in the Charge that corresponds with her termination date, both suggest that the Plaintiff's

claims related to her termination only. Indeed, because the coworkers she complained about were purportedly fired in response to her complaints, the Defendant would not have had a reason to believe that the Plaintiff was relying on that conduct as a basis for holding the Defendant liable. Although unlisted claims may be "so related and intertwined in time, people, and substance that to ignore that relationship for a strict and technical application of the rule would subvert the liberal remedial purposes of the Act," *Sitar*, 344 F.3d at 726 (quoting *Kristufek v. Hussmann Foodservice Co.*, 985 F.2d 364, 368 (7th Cir. 1993)), that link does not exist where the cited claims and the unlisted claims "involve a separate set of incidents, conduct, and people, spanning over a period of time prior to the filing of [the] complaint and . . . months prior to [the plaintiff's] termination," *id.* at 726–27. Here, the Plaintiff has not shown that her allegations of sexual harassment from two coworkers in 2014 are intertwined in time, people, and substance with the March 2015 termination that is the basis of her discrimination and retaliation claims. Accordingly, the Plaintiff's hostile work environment claim is procedurally barred.

## STATEMENT OF FACTS

The Plaintiff began working for the Town of Highland in 2004 as a part time meter reader. She received a promotion to senior meter reader. She then transferred to landscaping and became the master gardener. The Plaintiff worked toward getting her Commercial Driver's License (CDL) so she could become a full time driver. In October 2013, the Plaintiff was hired full time as a Driver C. In April 2014, she was promoted to a Driver B. During her tenure, the Plaintiff received the raises that were authorized by the Town.

After the Plaintiff became a Driver, she claimed that Rick Benda, a mechanic, harassed

4

her. Bach became aware of an incident where the Plaintiff claimed that her truck needed work done, but the mechanics did not work on it until later. In February 2014, Bach investigated and then brought the Plaintiff, Benda, and another mechanic, Rick Steyer, together for a meeting.

Later, in the summer, the Plaintiff believed that Benda pulled a fuse from her truck to disable the air conditioning. She also claimed he drew intimidating pictures. One of the drawings depicted two figures labeled "T" and "J" with the T figure holding the J figure by a leash and collar saying "here boy." The T figure is drawn smaller than the J figure. The Plaintiff interpreted it as referring to her and Jason Westerhoff implying that he does what she says. The Plaintiff believed that another drawing was a self portrait of Benda with a mean look on his face. She thought he removed her tools from a toolbox in order to use the toolbox on another truck. Someone put a gynecological exam table in the storage room. It was removed when the Plaintiff complained.

Bach did not believe any of Benda's actions were because of the Plaintiff's gender, but in August 2014 he made efforts to address and remedy the hostility between Benda and the Plaintiff. Then, on September 10, 2014, Benda drove his truck near the Plaintiff in an attempt to scare her. He also played the song "It's a Man's World" in her presence. On the same day, he also pulled out behind her when she left work under circumstances suggesting that he intentionally waited to follow her out of the parking lot. Bach investigated the incidents and suspended Benda, which ultimately resulted in his termination. However, Bach's investigation also revealed no connection between Benda's actions and the Plaintiff's gender, and that the Plaintiff instigated fights with Benda.

Another employee, Bruce Smith commented about the Plaintiff making an EEOC claim,

and also made sexual comments. According to the Plaintiff, she brushed it off but learned later that Judy Vaughn had complained about his behavior because she overheard what had happened. Smith was suspended pending dismissal, and he ultimately resigned.

Six months later, an investigation into unauthorized tape recordings led to the Plaintiff's termination. An employee secretly planted tape recording devices within the Defendant's facility and recorded conversations without the knowledge of those who were being recorded. Bach learned about the recordings around March 2013 when a disk containing about an hour's worth of conversation that took place inside John Mouratide's office was left at his house. Some time later, Bach received a letter from a relative of Jason Westerhoff, identifying Westerhoff as the person who made the recordings. Bach ultimately determined that Westerhoff made the recordings, and terminated his employment.

When Bach began investigating, he concluded that Brian Barr, Robert Bottom, Bruce Liester, Brian Bell, Westerhoff, and the Plaintiff were aware of the recordings, and had intimate knowledge of the situation, including who was responsible for recording the conversations. Most of these same people had also listened to the recordings. When asked what they knew and who created the recordings, Barr, Bottom, Liester, and Bell all providing information regarding their knowledge of the contents of the tapes and who made them. They also indicated that the Plaintiff was aware of the tapes and had been present in conversations surrounding the content of the tapes. However, when Bach met with the Plaintiff on March 3, 2015, and asked whether she had any knowledge or involvement in the matter of the audio taping of the supervisors' meeting or in John Mouratide's office, she simply stated that everyone knew that there was talk of audio recordings, but she did not otherwise admit what she knew about the tapes. Bach asked the

Plaintiff to leave and when she asked why, he responded that it was because she did the same thing that Emmie did. The Plaintiff did not know what this meant. Bach's correspondence to the Plaintiff after their meeting stated that she was terminated due to her involvement in illegal and unethical activity, particularly her failure to cooperate in the investigation of secretly recorded personal conversations.

## ANALYSIS

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is the moment in litigation where the non-moving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Although facts and reasonable inferences are construed in favor of the nonmoving party, this does not extent to inferences supported only by speculation or conjecture. *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). Material facts are those that are outcome determinative under the applicable law. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997).

### A.    Discrimination Claim

Discrimination claims may be reviewed on summary judgment under the direct or the burden-shifting methodologies. *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). When a plaintiff responds to a motion for summary judgment on an intentional discrimination claim by relying on the burden-shifting framework created by

7

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the court should assess the case in those terms. *Id.*; *see also Ferrill v. Oak-Creek-Franklin Joint Sch. Dist.*, No. 15-3805, 2017 WL 2627820, at *4 (7th Cir. June 19, 2017) (noting that *McDonnell Douglas* burden-shifting analysis has not been displaced). When the plaintiff does not present her argument in opposition to summary judgment in those terms, the direct method of proof is the "default rule." *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 880 (7th Cir. 2016) (quoting *Morgan v. SVT, LLC*, 724 F.3d 990, 997 (7th Cir. 2013)). Under that method, the test is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the [adverse action]." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (setting out the standard for avoiding summary judgment on discrimination claim under the direct method of proof). In all cases, the question at summary judgment remains: "has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination?" *David*, 846 F.3d at 224; *see also Liu v. Cook Cty.*, 817 F.3d 307, 315 (7th Cir. 2016) ("The proper question under either method is simply whether a reasonable trier of fact could infer retaliation or discrimination."); *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014) ("[T]he fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination.")

The Plaintiff has invoked the burden-shifting method. "Generally speaking, under *McDonnell Douglas*, the plaintiff has the initial burden of establishing that '(1) she is a member of a protected class, (2) she performed reasonably on the job in accord with her employer['s] legitimate expectations, (3) despite her reasonable performance, she was subjected to an adverse employment action, and (4) similarly situated employees outside of her protected class were

8

treated more favorably by the employer.'" *David*, 846 F.3d at 225 (quoting *Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 234 (7th Cir. 2014) (internal quotation marks omitted), *overruled on other grounds by Ortiz*, 834 F.3d at 765. "If the plaintiff satisfies that burden, then the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *Id.* (quoting *Andrews*, 743 F.3d at 234).

Pretext "involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action." *Burton v. Bd. of Regents of the Univ. of Wis. Sys.*, 851 F.3d 690, 698 (7th Cir. 2017) (quoting *Harden v. Marion Cty. Sheriff's Dep't*, 799 F.3d 857, 864 (7th Cir. 2015)). Merely disagreeing with an employer's reason does not meet this standard. *See Liu*, 817 F.3d at 316 ("'The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered' for the adverse action." (quoting *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011))). "[T]he question is never whether the employer was mistaken, cruel, unethical, out of his head, or downright irrational in taking the action for the stated reason, but simply whether the stated reason was his reason: not a good reason, but the true reason." *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 418 (7th Cir. 2006).

Even if the Plaintiff could establish a prima facie case of discrimination, her attack on the honesty of the Defendant's stated reason for terminating her employment falls short.[1] The

---

[1] The Court is aware of the Seventh Circuit's position that an employer may not be subjected to a pretext inquiry if the plaintiff is not able to establish a prima facie case, and that the prima facie case "must be established and not merely incanted." *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 463 (7th Cir. 2014) (stating that "it is beneficial to our body of case law to address the elements of the prima facie case even if it seems likely that a plaintiff will fail the pretext inquiry after burden shifting has occurred" (citing *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 394 (7th Cir. 2010))). However, legitimate job

9

Plaintiff argues that the reason Bach gave for terminating her when he told her to leave the March 3 meeting was not the same reason he provided in her termination letter. During the meeting, Bach said the Plaintiff did the same thing Emmie did. The letter cited her involvement in illegal and unethical activity in secretly recording personal conversations, particularly her failure to cooperate in the investigation. A review of the entire record does not reveal this to be an inconsistency. When Bach said that the Plaintiff did the same thing as Emmie, he was referring to lying in a disciplinary investigation, as he believed that Emmie Daniel was fired for the same reason. When Bach asked the Plaintiff questions about the recordings, he believed, based on information he received from other employees who also implicated themselves, that the Plaintiff had more detailed knowledge besides simply being aware tapes existed. Bach's comment was precipitated by the Plaintiff making no admission that she knew details about the recorded conversations, including their content or who was responsible for hiding the recording device. Bach believed the Plaintiff was not being forthright. His testimony was unequivocal: "I fired her because she lied when I asked her if she was aware of the tapes. . . . [S]he denied any knowledge of the tapes." (Bach Dep. 18, ECF No. 23-2.) Bach believed that Emmie also "lied in the disciplinary investigation." (*Id.* 49.) The letter references her failure to cooperate, which is another way of saying that she was not being truthful.

The Plaintiff disagrees with Bach's characterization, and submits that she did not deny

expectations and pretext inquires may overlap, particularly where the employer's reason for termination is that the employee was not meeting a legitimate job expectation. *Id.* In both cases, the credibility of the employer's claim is at issue. *Id.*; *Adelman-Reyes v. Saint Xavier Univ.*, 500 F.3d 662, 665 (7th Cir. 2007) ("The prima facie case and pretext inquiries often overlap; we may skip the analysis of a plaintiff's prima facie case and proceed directly to the evaluation of pretext if the defendant offers a nondiscriminatory explanation for its employment decision."). Here, the inquires contain sufficient overlap to move directly to the pretext inquiry, especially keeping in mind that the ultimate question is whether a reasonable trier of fact could infer discrimination.

knowledge of the tapes. As proof, she cites to her deposition testimony:

> Q. In the course of the conversation, did he ask you about audio recordings?
>
> A. He said something about audio recordings.
>
> Q. And do you remember anything that you said about audio recordings?
>
> A. Just that, you know, everyone there knew that there was talk of audio recordings.

(Ryan Dep. 28, ECF No. 23-1.) The Plaintiff's argument fails to appreciate that there is considerable difference between admitting an awareness that people were talking about recordings—and that everyone knew there was such talk—and providing more detailed information about the content of the recordings or who was responsible for the recordings. This difference is what led to Bach's different treatment of the men the Plaintiff attempts to compare herself to. The Plaintiff contends that she did the same as Barr, Bottom, Liester, and Bell when she acknowledged awareness. Bach, however, did not consider the Plaintiff's statement to be an admission of her actual level of awareness. (Bach Dep. 16–17 (stating that the Plaintiff did not tell him she was aware of the tapes).) That is why he compared her to Emmie. In contrast, the men "provided testimony about what they knew about the recordings" when he asked about the tapes. (*Id.* 17–18.) Thus, the Plaintiff cannot claim that she "engaged in similar conduct, but nonetheless received disparate treatment for no apparent legitimate reason." *Adams v. Wal–Mart Stores, Inc.*, 324 F.3d 935, 939–40 (7th Cir. 2003).

The Plaintiff also argues that it is proof of pretext that two of the three grounds set out in Bach's termination letter are "obviously untrue." (Pl.'s Resp. 5, ECF No. 24.) The letter advised the Plaintiff, "Your termination was due to your involvement in illegal and unethical conduct in secretly recording personal conversations, particularly your failure to cooperate in the

11

investigation." (March 3, 2015, Letter, ECF No. 24-1.) The Plaintiff believes that it is telling that Bach admitted that he had no information that the Plaintiff made the tapes or even listened to them. She argues, since "knowing about the tapes is neither illegal nor unethical," the stated reasons are untrue and pretextual. (Pl.'s Resp. 5.) The Plaintiff's argument relies on a illogical and eristic reading of the letter. It did not provide three grounds for termination. It provided one. Bach would have understood that he was identifying her particular "involvement" in secretly recording conversations as her "failure to cooperate in the investigation." The letter does not present a choice of inferences that prevents summary judgment. *See Smith on Behalf of Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997) (explaining that "'[i]n the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'" (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962))).

The Plaintiff contends that her termination is also suspicious because Bach knew for two years prior to the termination that Westerhoff was responsible for the recordings. The Plaintiff designates page 22 of Bach's deposition in support of this assertion. The testimony, however, is confusing, mostly because more than one tape is referenced, and no dates are provided. When Bach was questioned why he "[sat] on it for two years" in reference to a letter identifying Westerhoff as the person who made the tapes, Bach answered, "Again, it was relatively new." (Bach Dep. 23.) This is consistent with his testimony earlier in his deposition that he began his investigation closer to March 2015 because "things started to come together with respect to who may have been involved." (*Id.* at 15.) There is no evidence before the Court that Bach had any reason to know who was responsible for making the tape that was left at his house. In any event, the timing does not show that the investigation, or the basis for the Plaintiff's termination, were

12

fabricated to hide sex discrimination. Westerhoff, the person responsible for making the recordings, was fired the same day as the Plaintiff.

The Plaintiff has not shown a genuine issue of fact. The Plaintiff may not agree with Bach's expectation for her cooperation, but she has no evidence that he did not honestly believe that she was being uncooperative and that she knew more than she was admitting. It must be remembered that "the pretext inquiry turns on honesty, not correctness." *Liu*, 817 F.3d at 318 ("[E]ven if we assume a less severe punishment might have been more appropriate, that fact does not, without more, provide evidence of pretext.") (citing *Zayas v. Rockford Mem'l Hosp.*, 740 F.3d 1154, 1158–59 (7th Cir. 2014) (finding it irrelevant whether the plaintiff's emails were not egregious enough to justify her termination, as long as the decision maker believed they were)). The Plaintiff's evidence does not create triable issues whether she was terminated from her employment because she is a woman.

In assessing cumulatively all of the record evidence without the assistance of the *McDonnnell Douglas* paradigm, it is clear that a reasonably jury could not conclude that the Plaintiff's termination was the result of her sex. The Plaintiff presents a myriad of workplace complaints. They are, however, unhelpful in terms of avoiding summary judgment. They are either lacking in sufficient detail or evidentiary support, unrelated to gender, or removed from the employment decision in terms of timing or because they did not involve Bach—the only decision-maker who has been identified in this case.

**B.     Retaliation**

A retaliation claim arises when an employee engages in activity protected by Title VII

and suffers an adverse employment action as a result. *See Boston v. U.S. Steel Corp.*, 816 F.3d 455, 464 (7th Cir. 2016). To survive summary judgment, the Plaintiff has to point to evidence supporting a reasonable inference that she was fired because she engaged in protected activity. *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017). The principal argument that the Plaintiff offers is that she complained of discrimination and filled out a questionnaire for a sex discrimination claim with the EEOC and, "[s]hortly" thereafter, was "subjected to adverse employment actions." (Pl.'s Resp. 17.) The Plaintiff also asserts that she can make out a prima facie case under the indirect method.

In the Plaintiff's one-paragraph analysis of her retaliation claim, the Plaintiff does not attempt to attach any dates to her protected activity, or to the alleged adverse actions, despite her argument that the "time nexus alone is circumstantial evidence enough to enable a jury to render a decision that the Plaintiff's termination was in retaliation for engaging in protected activity." (*Id.*) The Plaintiff cites two cases in support of this proposition. (*Id.* (citing *Carter v. Enter. Rent-A-Car Co.*, No. 01 CV 4494, 2002 WL 1759821 (N.D. Ill. July 29, 2002), and *Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994).) In both cases, the court found that the timing of an adverse employment action supported the inference of a causal link sufficient to establish a prima facie case of retaliatory discharge. However, the plaintiffs in those cases were still required to show that the employer's stated reason for the action was a pretext for retaliation. To prevail on a retaliation claim requires "proof that the desire to retaliate was the but-for
cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013).

The Defendant notes that the Plaintiff last complained of the actions of male employees in September 2014, six months before she was terminated. There is no evidence that the Defendant was aware of the EEOC questionnaire, which has not been provided to the Court on this summary judgment record. "Deciding when the inference [of causation] is appropriate cannot be resolved by a legal rule; the answer depends on context, just as an evaluation of context is essential to determine whether an employer's explanation is fishy enough to support an inference that the real reason must be discriminatory." *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011); *see also Taylor–Novotny v. Health Alliance Med. Plans, Inc.*, 772 F.3d 478, 495–96 (7th Cir. 2014) (emphasizing that "suspicious timing must be evaluated in the context of the whole record"). The context of this case does not warrant an inference of causation. The Plaintiff's termination was not "so close on the heels of a protected act" *Loudermilk*, 636 F.3d at 315, that it can support an inference of causation, *see, e.g.*, *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 675 (7th Cir. 2011) (concluding that period of 3 to 14 days between complaint and firing was not enough, on its own, to create triable issue because context for firing prohibited inference of retaliation). The EEOC questionnaire does not change the analysis. "An employer must have actual knowledge of the employee's protected activity to state a claim for retaliation," *Smith v. Lafayette Bank & Trust Co.*, 674 F.3d 655, 658 (7th Cir. 2012), and the Plaintiff presents no evidence that Bach was aware of it.

Putting aside the fact that the Plaintiff has not pinpointed relevant dates that would permit an inference of retaliation, the Plaintiff's failure to discuss pretext is an equally glaring omission. In addition to suspicious timing, a plaintiff must ordinarily present other evidence that the employer's explanation for the adverse action was pretext for retaliation. *Harden v. Marion Cty.*

15

*Sheriff's Dep't*, 799 F.3d 857, 864–65 (7th Cir. 2015); *Simpson v. Office of Chief Judge of Cir. Ct. of Will Cty.*, 559 F.3d 706, 713–14 (7th Cir. 2009). For the reasons already set forth above, the Court finds that Defendant's asserted basis for terminating the Plaintiff's employment was not a phony reason intended to cover up an unlawful reason.

**CONCLUSION**

For the reasons stated above, the Court GRANTS the Defendant's Motion for Summary Judgment [ECF No. 22]. The Clerk is directed to enter judgment in favor of the Defendants and against the Plaintiff.

SO ORDERED on July 12, 2017.

                                            s/ Theresa L. Springmann
                                           CHIEF JUDGE THERESA L. SPRINGMANN
                                           UNITED STATES DISTRICT COURT